**TRIANGLE ENGRAVING CO., Inc., v. UNITED STATES.**

District Court, S. D. New York.

April 4, 1938.

Herman Saperstein, of Jamaica, L. I., for petitioner.

Lamar Hardy, U. S. Atty., of New York City (Myles J. Lane, Asst. U. S. Atty., of New York City, of counsel), for the United States.

LEIBELL, District Judge.

This is a suit against the United States, brought pursuant to 28 U.S.C.A. § 41(20), permitting the institution of suits against the United States in the United States District Courts on claims not exceeding $10,000 founded upon a contract entered into by the United States. The petitioner is a New York corporation engaged in the photoengraving business. It was the successful bidder upon a government contract for furnishing all necessary labor, material, and equipment in making one set of four-color process plates of an original painting for an army recruiting poster which had been painted by Major Woodburn, a member of the Recruiting Bureau of the United States Army. The contract was signed on March 12, 1936, and the petitioner was to receive $896 for the work. In a schedule upon the reverse side of the bid submitted by the petitioner, which was annexed to and made a part of the contract, there is a clause reading as follows: "The successful bidder will be required to furnish two (2) progressive proofs of the completed plates at the time the plates are completed and delivered to the electrotyper to be specified. The progressive proofs must reproduce the original painting to the satisfaction of the Chief, Recruiting Publicity Bureau, or his representative. The delivery to the electrotyper shall be made by the successful bidder."

At the time the contract was signed and up until June 2, 1936, Colonel Hemingway was Chief of the Recruiting Bureau. He had designated Major Woodburn head of the Art Department of said Bureau, and the latter passed on all art work submitted thereto, and, as such, was Colonel Hemingway's representative under the above clause in the contract. On June 2, 1936, Major Pivirotto became Chief of the Bureau, but Major Woodburn remained head of the Art Department, and was his representative.

The poster depicts four soldiers marching abreast. The two men in the center of the group are color-bearers; one holding a standard, the "Stars and Stripes," the other carrying a regimental flag. The two men on the outside, the color guards, are marching with their rifles upon their shoulders. Blue sky and fleecy clouds form a background, both tinged slightly with a rosy hue. At the top of the picture are the words "U. S. Army," and at its base a legend reading "Guardian of the Colors."

In performing its contract petitioner had photographs made of the painting and from the photographs developed the four copper color plates, yellow, black, blue, and red, from which a composite proof was made. The first, a rough proof, was submitted to Major Woodburn early in April, 1936. He suggested some corrections which were made in several of the plates, and a second proof was submitted on April 20th or 21st. In the opinion of the court, this second proof (Exhibit 3) was in fact a satisfactory reproduction of the painting. However, Major Woodburn was not satisfied with this second proof and suggested further corrections. In attempting to make the additional corrections, the petitioner routed or cut out too much of the surface of certain sections of the red plate. When a third proof was submitted about the 5th or 6th of June, Major Woodburn was still dissatisfied, and this time properly so. He called petitioner's attention to the imperfections in the proof. Because of the physical changes already made in the red plate, the officers of the petitioner knew that the further corrections required by the Major, to restore part of the red background, could not be made unless a new red plate was made. This would involve considerable expense. Petitioner's officers stated that the proof submitted was the best job they could do, and that petitioner would not make further changes. Petitioner requested the Major to accept the plates as they were, but he refused. Petitioner did nothing thereafter. Having reached an impassé, a contract was finally awarded by the government to the second lowest bidder, the Central Photo Engraving Corporation; its final proofs were accepted, and the posters were printed.

The petitioner claims that it has performed all the conditions of the contract of March 12, 1936, on its part to be performed, and is entitled to $896, the amount specified in said contract. This the respondent denies, and asserts a counterclaim for the difference between petitioner's bid and the amount it was required to pay for the process plates under its contract with the Central Photo Engraving Corp.

One question involved in this case is whether the court's opinion or the opinion of Major Woodburn should be controlling with respect to the accuracy of the reproduction of the original painting by the petitioner's successive proofs. In the case of Thompson-Starrett Co. v. La Belle Iron Works, 2 Cir., 17 F.2d 536, the plaintiff had contracted to build a number of houses for the defendant. The contract provided that the work was to be done under the direction and to the satisfaction of the general superintendent of mines. In construing this clause the court held that under the federal decisions the question presented by such a provision is whether the promisor was in fact satisfied with the performance, and not whether he ought to have been.

In J. H. Sullivan Co. v. Wingerath, 2 Cir., 203 F. 460 Judge Noyes stated (page 461): "The trial court, in charging in accordance with the request of the plaintiff, correctly stated the law. The case was not one in which the necessity for, or finality of, an architect's certificate was involved. It was simply a case in which the parties had agreed that the work should be done 'to the satisfaction of the architects.' But in such a case the agreement as made must be lived up to. The question is not whether the work ought to be satisfactory but whether it is satisfactory. When parties agree that the question of the performance of a contract shall be left to the determination of a third person, his decision is final in the absence of mistake, fraud or arbitrary action amounting to legal fraud. To say in such a case that the question is one of substantial performance is to make a

new contract for the parties and to substitute the judgment of the jury, for that of the person they have agreed upon."

So, in the instant case, the decision of Major Woodburn that the proofs were not satisfactory reproductions of his painting is conclusive and binding upon the court. There is no question of mistake or fraud. He was honestly dissatisfied. He found what he considered defects in the proofs, and his rejection of them was not mere arbitrary action which would amount to legal fraud. Under the circumstances, the petitioner's claim must be dismissed.

As to the respondent's counterclaim: Whoever in petitioner's employ made the further changes in the red plate after Major Woodburn requested changes in the second proof, Exhibit 3, spoiled the red plate, and made it practically impossible to use it in producing a proof that would show part of the red background in the section of the picture immediately below the flags and near the faces of the soldiers. After the third proof, Exhibit 5, was rejected, petitioner's refusal to make any further corrections constituted a breach of its contract. Article 5 of the contract provides: "If the contractor refuses or fails to make deliveries of the materials or supplies within the time specified in Article 1, or any extension thereof, the Government may terminate the right of the contractor to proceed with deliveries or such part or parts thereof as to which there has been delay. In such event, the Government may purchase similar materials or supplies in the open market or secure the manufacture and delivery of the materials and supplies by contract or otherwise, the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. * * *"

Upon petitioner's breach the respondent made a contract with the Central Photo Engraving Corporation, the second lowest bidder on the original letting, at an increase in price of $268.24. The progress proofs made under the new contract were, after certain corrections, satisfactory to Major Woodburn, and the color plates made by the Central Photo Engraving Corporation were then accepted. The company was thereupon paid for the plates the sum of $1,164.24 on August 24, 1936. For the difference between the petitioner's contract price and the price paid the Central Photo Engraving Corporation, the respond-ent is entitled to recover as its counterclaim herein.

Petitioner's claim is dismissed, and respondent is awarded judgment on its counterclaim for $268.24, together with interest from August 24, 1936, and the costs of this suit.